**FIRESTONE TIRE & RUBBER CO., Plaintiff,**

v.

**PENSION BENEFIT GUARANTY CORP., et al., Defendants.**

**Civ. A. No. 86–3306–OG.**

United States District Court, District of Columbia.

Sept. 13, 1988.

Willis Goldsmith, Washington, D.C., for plaintiff.

Peter Gould and Thomas Smith, Washington, D.C., for defendants.

Daniel Kozma and Paul Green, Washington, D.C., for proposed amicus.

GASCH, Senior District Judge.

This case concerns the proper disposition of the residual assets of a terminated pension plan. Plaintiff Firestone Tire & Rubber Company (Firestone) challenges the Pension Benefit Guaranty Corporation's (PBGC) rejection of Firestone's proposed alternative method for calculating how much, if any, of the nine million dollars left in Firestone's terminated pension fund is "attributable to employee contributions." The issue presently before the Court, however, is proposed *amicus curiae*'s motion for appointment to advise the Court on the need for appointment of counsel to represent plan participants and beneficiaries.

Under the Employee Retirement Income Security Act of 1974 (ERISA), if participants contribute to a pension plan, and the plan is terminated, the residual assets "attributable to employee contributions" are to be returned to the employees in a pro rata distribution. 29 U.S.C. § 1344(d)(2). Absent evidence to the contrary, a portion

of residual assets are assumed to be attributable to employee contributions. 29 C.F. R. § 2618.31. The PBGC's regulations provide four methods for calculating what portion of residual assets are attributable to employee contributions. *Id.* The regulations also allow a Plan Administrator to submit for PBGC approval an alternative means of calculating the investment income attributable to employee contributions. *Id.* In this case the PBGC disapproved Firestone's proposed alternative method. Firestone's proposed calculation attributed none of the nine million dollars to employee contributions.

The proposed *amicus* argues that the participants have significant interests at stake in this litigation, yet neither plaintiff Firestone nor defendant PBGC represents the participants. The movants, attorneys from two law firms, were approached by several participants seeking representation. The proposed *amicus* claims that the participants "face obvious and insurmountable obstacles in organizing themselves and have been unable to marshall the necessary resources to secure counsel on their own." Proposed *Amicus Curiae*'s Brief at 6. Appointment of an *amicus* is sought to prepare a report for the Court on the need to appoint an independent representative for the participants; the cross-motions for summary judgment currently pending are to be stayed until the report is finished. The Court is urged to authorize the payment of fees and expenses for both the *amicus curiae* and the independent representative, if one were to be appointed, out of the nine million dollars remaining in the fund. The movants also question the propriety and lawfulness of the Plan's termination, suggest that Firestone may have violated its fiduciary duty as Plan Administrator, and declare that the rights of the participants cannot be ascertained from the Administrative Record "because Firestone has not produced all of the governing plan documents and instruments." Proposed *Amicus Curiae*'s Brief at 6–9.

The motion and the concomitant delay are vigorously opposed by plaintiff Firestone. Defendant PBGC has remained neutral on the motion.

### I. *Discussion*

It is well-established that the decision to appoint an *amicus* rests within the broad discretion of the trial court. *See Hoptowit v. Ray*, 682 F.2d 1237, 1260 (9th Cir.1982). The true issue presented by this motion, however, is not whether to appoint an *amicus,* but whether to appoint an independent representative. It appears inevitable that the *amicus* seeking appointment in this case will conclude that appointment of an independent representative is warranted. *See* Proposed *Amicus Curiae*'s Reply at 9. Even if the proposed *amicus* were not predisposed in this manner, it is no better equipped than the Court to determine the need for an appointed representative in this case. The voluminous Administrative Record at hand is adequate to evaluate the arguments put forth by Firestone and PBGC regarding the proper disposition of the nine million dollars of residual assets, a point conceded by the proposed *amicus* at oral argument. Consequently, the Court will look beyond the *amicus* issue and consider the propriety of appointing an independent representative for the participants.

### A. *The Court's Appointment Power*

The parameters of the Court's power to appoint a representative are ill-defined due to the dearth of case law on the subject. The *amicus* cites to only two cases in which counsel was appointed for parties not represented in the litigation. In *Friends For All Children, Inc. v. Lockheed Aircraft Corp.*, 567 F.Supp. 790 (D.D. C.1983), Judge Oberdorfer of this Court appointed an *amicus* to advise the court about the propriety of a communication from the firm representing Friends for all Children (personal representative of 150 infants killed in a plane crash) to the infants' parents. The firm had advised the parents to substitute themselves as personal representatives and explained its fee arrangement. The court appointed an *amicus* as guardian *ad litem* with the responsibility, *inter alia*, to communicate with the parents about participating in the suit and being represented by the original law firm.

*Id.* at 795–96. Although the court's reasons for the appointment were not entirely clear, apparently it felt the appointment was necessary because communication between the parents and the original law firm raised ethical questions. The propriety of the court's appointment of the guardian *ad litem* was not challenged (although the payment of fees was challenged on appeal). *See Schneider v. Lockheed Aircraft,* 658 F.2d 835 (D.C.Cir.1981).

Thus, unlike the instant case, counsel was appointed in *Friends For All Children* to facilitate communication between the foreign parents and the United States law firm and to help resolve the airline disaster claims in as few suits as possible. *See id.* at 796. The original law firm, not the guardian *ad litem,* represented the plaintiffs at the subsequent trials in *Friends For All Children.* Inadequate representation did not appear to be a factor in the decision to appoint the guardian *ad litem.*

In *Delgrosso v. Spang & Co.,* 769 F.2d 928 (3d Cir.1985), the plaintiffs, pension plan participants, challenged the Plan Administrator's attempt to recover the surplus assets of an amended fund. The district court granted summary judgment in favor of the employer. The third circuit reversed much of the district court's decision, finding that the pension plan specifically precluded reversion of the funds to the employer and that the employer violated its fiduciary duty as Plan Administrator. The Third Circuit's decision called for appointment of an independent administrator to determine how the residual assets of the fund should be distributed. Because the suit was brought by non-vested participants, the Third Circuit directed the district court to appoint a representative for the vested participants to represent them before the district court when it selected an independent plan administrator.

These two cases suggest that the Court has the power to appoint a representative, but provide little guidance as to what standards the Court should employ in evaluating this appointment request. In other contexts, parties are added if they have interests at stake that are not adequately represented. *See* Fed.R.Civ.P. 19 & 24. The infrequent use by courts of their power to appoint counsel suggests that some additional factor should be present, such as the inability of the parties to secure representation on their own or as a class, or a unique opportunity to expeditiously and fairly resolve related claims. *See Friends For All Children,* 567 F.Supp. at 795–96 (appointing guardian *ad litem* where infants' parents resided in Europe and court intended to resolve numerous related suits expeditiously). The Court will now evaluate the presence of these factors in the instant case.

B. *Interests at Stake*

The participants' interests at stake in this litigation are whatever rights they have to the nine million dollars in surplus assets sought by Firestone. What does not revert to Firestone will almost certainly be distributed to the participants. Thus, they have substantial interests at stake if this litigation will impair their rights to those assets.

If Firestone succeeds in overturning the PBGC's determination in this action, the participants probably could not then seek to uphold or reinstate the PBGC's determination in another setting. Therefore, the participants' interests are at stake. That is not to say that resolution of this case in favor of Firestone would preclude any claims the participants might have to the nine million dollars. But the PBGC's decision suggests that the participants may be able to recover at least some of the residual assets, and it would be to their advantage to have the PBGC's decision upheld by this Court.

C. *Adequacy of Representation*

At issue in this suit is whether the PBGC's disallowance of Firestone's proposed calculation of employee contributions should be upheld. As a practical matter, Firestone cannot be considered to represent the interests of the participants while it advances a plan that will pay all of the surplus to itself and none to the participants. The PBGC's interests, however, are substantially the same as the participants. Both have a stake in seeing this Court

uphold the PBGC's decision. There is little reason to expect that the PBGC will defend the propriety of its determination any less zealously or ably than the participants.

The proposed *amicus* points to a letter from PBGC's General Counsel to one of the participants as proof that the PBGC does not represent the participants' interests. The letter reads in part, "We do not and can not represent either party [Firestone or the participants] regarding a matter before us for our decision." A.R. at 973. PBGC's General Counsel wrote this letter in response to a request from some participants for advice on a letter they were sending to Firestone. *See* A.R. at 974. Although the PBGC obviously does not represent the participants in the professional sense, that does not preclude adequate representation of their interests before the Court, especially where, as here, the PBGC's position mirrors the participants'.

The proposed *amicus* suggests that additional issues are present in this suit, such as the propriety of Firestone's termination of the plan, Firestone's compliance with its fiduciary obligations, and the prior distribution of other residual assets to Firestone. *See* Proposed *Amicus Curiae*'s Brief at 2; Proposed *Amicus Curiae*'s Reply Brief at 6. But those issues are not raised by the PBGC's determination and need not be addressed by the Court when reviewing the PBGC's decision.

The proposed *amicus* argues that even if these issues are not before the court, they should be since "the participants' ... rights may be effectively foreclosed in this action." Proposed *Amicus Curiae*'s Reply Brief at 6. But the participants' ability to base a claim on any of those theories will not be foreclosed by this action. That is, even if the Court were to side with Firestone, and some or all of the nine million dollars were determined to be attributable to Firestone's contributions, the participants' prospects for success on any of the aforementioned claims would not be affected. The Court's conclusion on this point is buttressed by the stipulation of Firestone's counsel at the oral argument on this motion that Firestone would not assert the defense of *res judicata* or collateral estoppel in a subsequent action by the participants.

Firestone and the proposed *amicus* argue at length about the degree to which the participants adequately presented their views to the PBGC during the course of the agency's determination. The participants did in fact communicate their views to the PBGC on numerous occasions. *See* A.R. at 689–842. In fact, this proceeding was delayed upon PBGC's request for additional time to allow the participants to present evidence to the PBGC before the agency made its final determination. *See* A.R. 889–99. As the proposed *amicus* notes, this cannot be equated with participation in the action, since the participants could make no attempt to undertake discovery and were not Firestone's adversary. Furthermore, merely communicating with the PBGC about a matter before it does not necessarily preclude the participants from joining the subsequent judicial review of the PBGC's decision. But it does lend support to the inference that PBGC is apprised of the participants' views and thus likely to assert them if they would support the PBGC's position before the Court.

The proposed *amicus* insists that the participants' rights can be adequately evaluated and represented only when Firestone "produce[s] all of the governing plan documents and instruments" for review by participants' attorneys and actuaries. Proposed *Amicus Curiae*'s Brief at 9. This contention undoubtedly stems from the PBGC's declaration that the factual information submitted by Firestone was insufficient to support its proposed method of calculation. A.R. at 13. Discovery might well be necessary to gauge the extent of all the participants' interests and claims vis-a-vis Firestone. But such discovery is not necessary for the Court to evaluate the propriety of the PBGC's determination.

### D. *The Participants' Ability to Retain Counsel*

The proposed *amicus* alleges that the participants "face obvious and insurmountable obstacles in organizing themselves and have been unable to marshall the necessary resources to secure counsel on their own." Proposed *Amicus Curiae* Brief at 6. Some participants apparently contacted a major Washington, D.C. law firm seeking counsel

but were unable to raise the $15,000 retainer required. Proposed *Amicus Curiae*'s Reply Brief at 5. Precisely when this contact took place is not clear. Apart from this example, the proposed *amicus* offers no evidence or rationale in support of its contention that an appointment is necessary because retention of counsel in the ordinary course is impossible.

Firestone argues that the participants have known since August, 1984 of its intent to terminate the Plan and recover the assets, a point not contested by the proposed *amicus*. Moreover, the record reflects numerous communications between the PBGC and participants during the course of this litigation and the PBGC's decisionmaking process. A.R. at 799, 842, 689–842. The complaint giving rise to this action was filed in 1986. Thus, the participants have not been precluded from hiring counsel by a shortage of time in which to organize.

Firestone notes that some participants are "Firestone's most senior current and former corporate officers," including individuals who held positions in the employee benefits department. Plaintiff's Brief at 11. Firestone also points to an instance in which Firestone's retirees organized themselves and retained counsel to challenge Firestone's attempted reduction of retiree health benefits in an unrelated matter. *Id.* at 12.

It is unclear what "insurmountable obstacles" prevent participants, either individually or collectively, from retaining counsel in this action. It is never a simple matter for a large number of persons to organize themselves and prosecute their claims, a fact recognized in the Federal Rules of Civil Procedure. *See* Fed.R.Civ.P. 23. Nonetheless, prospective plaintiffs often surmount these obstacles, either individually or as a class. The proposed *amicus* has not shown that there are any extraordinary circumstances in this case preventing the participants from organizing or otherwise retaining counsel.

### E. *Principles of Judicial Economy and Fairness*

The proposed *amicus* suggests that if a representative is appointed, the partici-

pants will join additional claims relating to termination of the Plan, Firestone's fiduciary duty, and the earlier distribution of millions in residual assets to Firestone. *See* Proposed *Amicus Curiae*'s Reply Brief at 9. The potential resolution of all claims among the PBGC, the participants, and Firestone in one suit supports the appointment of an independent representative. But closer analysis reveals that principles of efficiency and fairness mitigate against appointment of a representative.

The present dispute between Firestone and the PBGC has been before the Court for nearly two years. Cross-motions for summary judgment are ripe at this time. Appointing an *amicus*, waiting for its report, and then appointing a representative would obviously delay resolution of the present dispute. The proposed *amicus* makes clear that an appointed representative would go beyond the Administrative Record compiled by the PBGC to conduct discovery and compile an actuarial report. Proposed *Amicus Curiae*'s Brief at 9–10. Such discovery and investigation would be a time-consuming process. But, as noted earlier, resolving the question now before the Court would not impinge on the participants' ability to bring their aforementioned claims in another suit and does not require further discovery. Thus, appointing an independent representative would indeterminably delay the present action with little or no offsetting benefit.

An additional equitable issue militating against appointment is the payment of the *amicus* and the independent representative from the Plan's remaining assets. Because an appointment is not warranted, the Court need not consider the questions presented concerning the propriety of payment to the *amicus* and the representative. But it should be noted that an appointment would entail significant costs in light of the proposed *amicus*'s stated intention to undertake discovery and an actuarial investigation. The Court is hesitant to authorize the payment of these costs out of Plan funds without the imprimatur of participant approval inherent in a class action. Moreover, the participants' interest in receiving

48

whatever residual assets are rightfully theirs seems better served by avoiding the expense of representation in the instant case since the PBGC has made a preliminary determination in their favor and will ably defend that decision before the Court.

## II. *Conclusion*

The Motion for Appointment is denied. Although the participants' interest in the nine million dollars is at stake in a narrow sense, the PBGC is making the same argument that the proposed *amicus* would make. There is little to be gained by halting this proceeding for lengthy discovery intended to bolster other claims. Moreover, there are no compelling circumstances directing the Court to appoint counsel for the participants. Denying the motion will not prejudice other claims the participants might make. Finally, there is the additional benefit of not spending the retirement fund's surplus assets on legal fees in an action in which the retirees are already ably represented by a governmental entity.